JOHN COLEGATE, S. B. OF JAMES W. PRYOR, *vs.* THE FREDERICK TOWN SAVINGS INSTITUTION, *use of* S. GAITHER'S EXECUTORS.—*June* 1840.

Where a surety pays the debt of his principal, after judgment against himself and principal, and takes an assignment from the creditor, of the judgment against his principal under the act of 1763, ch. 23, he may proceed against the special bail of the principal debtor, whether the bail is fixed or not, at the time of the payment.

The design of the Legislature in passing the act in question, was to place the surety paying the debt, in the same situation with regard to the principal, as to the creditor, who had obtained the judgment, and to invest such surety, with all the rights and powers of the creditor, to enforce payment of the judgment against the principal, or if necessary, against the bail.

If to a *scire facias* against bail, the defendant, (the bail,) places his defence by plea upon other grounds, than the failure to issue a *ca. sa.*, and to have a return of "*non est*," the omission in the replication to set out such *ca. sa.* and return, cannot be regarded as a substantial defect.

APPEAL from *Frederick* County Court.

On the 22nd June 1837, the appellees sued out a writ of *scire facias* against the appellant, as special bail of *James W. Pryor*, suggesting that at *February* term of 1836, the appellees recovered judgment against the said *Pryor*, &c. This writ was returned, *made known*, and at October term 1837, the appellant appeared to said writ and pleaded—

1st. Payment to the appellees, the Savings Institution.

2nd. That heretofore, to wit, on the 2nd day of September, in the year 1834, to wit, at, &c., he the said *James W.*, together with a certain *Stuart Gaither* and *Jacob R. Thomas* as his securities, made and delivered to the said *Frederick Town Savings Institution*, the plaintiff aforesaid, their certain joint and several promissory note, as follows, to wit:

$100.                              *Frederick, Sept. 2nd,* 1834.

Sixty days after date, we jointly and severally promise to pay to *George Englebrecht*, secretary, or order, one hundred dollars, for value received; negotiable and payable at the Frederick Town Savings Institution.          JAS. W. PRYOR,

J. R. THOMAS,

STUART GAITHER.

("Endorsed,)—*Geo. Englebrecht.*"

That afterwards the said *Stuart Gaither*, departed this life, to wit, on the first day of April, in the year 1835. That afterwards a suit was instituted in *Frederick* County Court, upon the said note against the said *James W.*, and another suit was instituted in the same court, at the same time, against *Joseph Schell* and *Edward Gaither*, executors of the said *Stuart Gaither* as such security as aforesaid; and that judgment was afterwards, to wit, on the 23rd day of February 1836, had, and recovered in the said court, in each of the said suits instithuted as aforesaid on the said note, as will appear from the record thereof, still remaining in the said court—and that afterwards, to wit, on the 5th day of January 1837, the said *Joseph Schell* and *Edward Gaither*, executors as aforesaid, paid to the said *Frederick Town Savings Institution*, the plaintiff in the said writ of *scire facias*, the sum of, &c., in discharge and satisfaction of the judgment, so had and recovered against them as aforesaid; and that the said sum of money was the full amount of the debt, interest and costs of both the said judgments. And afterwards, to wit, on the 5th day of February, in the year 1837, to wit, at the county aforesaid, the said *Frederick Town Savings Institution*, the said plaintiff in the said writ of *scire facias*, assigned the said judgment so as aforesaid had and recovered against the said *James W.*, to the said *Joseph Schell* and *Edward Gaither*, executors as aforesaid, in manner following, that is to say—

| | |
|---|---|
| *Frederick Town Savings Institution,*<br>vs.<br>*James W. Pryor.* | No. 115.  Tri. F. C. 1836. 1836, Feb. 23—Judgment for debt $100.  Int. Nov. 4th, 1834, till paid.  Cost $6.21⅔. |
| *Same,*<br>vs.<br>*Edward Gaither and James Schell, executors of Stuart Gaither.* | No. 116.  As above. 1836, Feb. 23—Judgment for debt $100.  Int. Nov. 4th, 1834, till paid.  Cost $6.18⅔. |

*Maryland, Frederick County, Sc.*—KNOW ALL MEN BY THESE PRESENTS, That I *George Englebrecht*, secretary of the Fred-

erick Town Savings Institution, the plaintiff in the above mentioned suits, in consideration of full satisfaction for the above judgment number 116 by the Frederick Town Savings Institution, received of *Edward Gaither* and *Joseph Schell,* executors of *Stuart Gaither,* (deceased,) the defendants named in number 116, and who are as executors of *Stuart Gaither,* deceased, a security for the said *James W. Pryor,* the other defendants named in number 115, as by receipt and satisfaction, entered on record in number 116 appears, do hereby, and by force of the act of Assembly in such case made and provided, assign, transfer and make over, unto the said *Edward Gaither* and *Joseph Schell,* executors of *Stuart Gaither,* their heirs, administrators or assigns, the aforesaid judgment number 115, and the debt, interest and costs, and all additional costs thereon, and also all the right, claim and interest, which the Frederick Town Savings Institution have therein, or thereto, or which they had at any time heretofore.    Given under my hand and seal this fifth day of January 1837.

GEO. ENGLEBRECHT, *Sec'ty,*    (Seal.)

And this the said defendant is ready to verify, wherefore he prays judgment, if the said plaintiff ought, &c.

To these pleas the appellee replied,—viz: as to the *first* plea of the said *John,* saith, that by any thing, &c., because it saith, that after recovery of the said judgment, in the said writ of *scire facias* mentioned, and before the issuing of the said writ, to wit, on the 5th of January 1837, at, &c., the above named *Edward* and *Joseph,* executors as aforesaid, paid to the said institution a judgment against them, as the said executors, at suit of said institution, (here the plea recited the judgment,) which said judgment last mentioned, was rendered on a joint and several promissory note, to the said institution, in which said note the said *Stuart Gaither,* deceased, was surety for said *James W. Pryor,* and on which said note the said judgment, in the said *scire facias* mentioned, was also rendered against the said *James W.*    And on the payment of the said judgment against said executors, the said institution assigned the said judgment, in the said writ of *scire facias*

mentioned, to the said *Edward* and *Joseph,* executors as afore-
said, and ordered the same to be entered on the docket of *Fred-
erick* County Court, for the use of the said executors, and the
said institution saith, that the said judgment remains in full
force, unpaid and undischarged by the said *James W. Pryor,*
or by any other person, otherwise, than by the payment of the
said judgments, against the said *Edward* and *Joseph,* execu-
tors as aforesaid, and this the said institution is ready to ver-
ify; wherefore it prays judgment, &c.

To the *second* plea, the appellee demurred generally.

The defendant demurred generally to the plaintiff's replica-
tion to his first plea, and there were joinders.

The county court overruled the defendant's demurrer to
the replication of the plaintiff to the first plea, and sustained
the plaintiff's demurrer to the second plea of the defendant,
and thereupon rendered final judgment for the Savings Insti-
tution; and the defendant, *Colegate,* appealed to this court.

The cause was argued before Archer, Chambers, and
Spence, J.

By Brengle for the appellant, who submitted the cause
on a written argument. After adverting to the facts, said
the question for the court is, whether the appellee can recover
in this action? It is true that the decisions have reached a
great length in extending remedies to sureties for money paid
by them as such. They are justly much favored by the law.
They may be styled the peculiar favorites of the courts. The
case of *Parsons and another vs. Braddock,* 2 *Vernon, p.* 608,
has gone so far as to make bail against whom judgment had
been had, before payment by the surety, liable to the surety.
This case, it has been said in *Creager vs. Brengle,* 5 *Harris
and Johnson, p.* 234, has pushed the doctrine of substitution
to its utmost verge. But I think it has gone beyond the doc-
trine itself. The case, however, is put on the ground, that at
the time of the payment by the surety, the judgment of the
creditor against the bail had been obtained, and in this differs
from this case. There the liability of the bail had become

fixed and passed in *rem judicatam*, and the bail as a debtor, was held liable and to stand in the place of the principal in reference to both the creditor and surety. Here the bail was not fixed at the time of the payment by the surety. The case of *Creager vs. Brengle* decides, that independent of the act of 1763, if a surety pay the debt of his principal against whom judgment had been obtained, and who had given special bail, he, the surety, could not make the bail responsible to him for the debt. This case, but for the act of 1763, is decisive of the question. *Creager, Sen.* as principal, and *Brengle* as surety, executed a joint and several bond to *Burke* for $1000. The bond, by an equitable assignment, came to the hands of *Gebhart*, who instituted suit against each of the obligors in *Burke's* name, for his use, and obtained judgments. *Cronice* was the special bail of *Creager, Sen.* in the suit against him. *Brengle*, the surety, paid the money to *Creager, Jr.*, the assignee of the judgment against *Creager, Sen.*, and demanded an assignment of the judgment, which *Creager, Jr.* refused, except upon condition that *Brengle* would not proceed against *Cronice*, the bail. This conditional assignment *Brengle* refused to accept, and filed his bill in Chancery to compel an unqualified assignment or a return of the money paid. The Court of Appeals decided that *Brengle* was not entitled to the relief asked, and reversed the decision of the Chancellor, who had decreed a repayment of the money. The appellate court in their opinion, say "that as the bail of *Creager, Sen.* could not have been made liable, if an unqualified assignment had been made by *Creager, Jr.* to the complainant, we think the latter ought to have received the assignment which the former was willing to give;" that is, an assignment upon condition not to proceed against the bail. And the court further say— "But if we should admit that the bail of the principal could not at law avail himself, by way of defence, of a payment by the surety, and in virtue of which the Court of Chancery had decreed an assignment of the judgment against the principal, still we think that the Chancellor would enjoin all proceedings against the bail." In this case the court have decided, that

apart from the act of 1763, the surety who pays the debt before judgment against the bail, has no claim upon the bail, and that the bail cannot be made liable to him. For otherwise, *Brengle,* the surety who had paid the debt, would have been entitled to an unqualified assignment of the judgment. Does the act of 1763, then make the bail responsible? This act does not extend or enlarge the obligation of the contract of the bail in the slightest degree. It merely enlarged the remedies of the surety, and nothing more. It affords to the surety the right to an assignment of the judgment against the principal at law, and authorises him to issue process of execution against the principal. The act merely adds this right of issuing execution to the rights previously had by the surety. It leaves the right of the surety, except as above, and the obligation and liability of the bail untouched, and merely affords the surety a new and cumulative remedy to enforce his rights. The right of the surety to be subrogated to the rights of the creditor is not founded in contract, but upon the principle of natural justice. *Ch. Kent.* 2 *John. C. C.* 130. 2 *Vesey,* 622. And with what justice can the surety call upon the bail of the principal for indemnity? The surety did not contemplate any such right at the time of his contract. He did not look to such quarter for relief. How then can it be said that it is natural justice that the bail should indemnify the surety? May not the bail have been induced to become bail for the debtor because he regarded the debt safe, the surety being good, and that his risk on this account would be small? The case of *Hollingsworth's Adm'r. vs. Floyd, et. al.* 2 *Harris & Gill, page* 87, presented to the Court of Appeals a question similar in principal to the question in this case. There A and B executed a joint and several obligation to C, A as principal and B as surety; C instituted separate suits and obtained separate judgments; each judgment was superseded by D and E; B the surety afterwards paid nearly the whole debt, and by an arrangement with plaintiff's counsel, issued a *fi. fa.* for his use on the supercedeas judgment of A, D and E. One question made in the case was, whether the superseders were liable to B the surety? The court in delivering judgment, page 91,

say—"The process was moreover issued upon the supersedeas judgment against A, and his superseders D and E, on whom B in justice could have no claim. If he had satisfied the whole debt, we should have said he was entitled equitably to an assignment of the judgment against his principal, and all liens which the principal had given to the creditor, but beyond this we should have been indisposed to have gone. We could not have rendered others liable to B, whose responsibility was in no sort contemplated when he entered surety for his principal." The very point was here decided. The cases are analogous at least in principle. It is true the court might have decided as they did, without determining this point, yet they have declared their judgment upon the point. If the superceder, then, of his principal be not liable to the surety, can the bail of the principal be? Is the obligation of the superseder less extensive than that of the bail? I insist that, that of the bail is less extensive, and not of so high a character as that of the superseder. If the surety have no claim in justice on the superseder of the principal, what justice is there in a claim of a surety against the bail of the principal? I can perceive none. Suppose that the bail in this case had also been the special bail of the surety in the suit against him, would it not be strange to say that the bail of the principal was liable to the surety? and yet this fact would not affect or alter the question. Suppose judgment had been obtained against the bail, and he had paid the debt, would he not have as much claim against the surety as the surety has against him? The bail is to all intents and purposes a surety. 10 *John. Rep.* 595.

2d Point. The judgment below is erroneous, because it does not appear that a *ca. sa.* against the principal was issued in this case and returned *non est.* It is clear that you cannot proceed against the bail before a *ca. sa.* has been issued against the principal and returned *non est.* See *Saunders Rep. 2 vol. part* 1, 71 *and* 72, *on notes,* and cases there cited. See 1 *Harris & Gill, p.* 154. *Cappeau's Bail vs. Middleton & Baker.* For these reasons and upon these authorities, it is insisted that the judgment below is erroneous, and ought to be reversed.

WORTHINGTON for the appellee contended—

1st. That the payment of the judgment against the surety, operates as an equitable assignment of the judgment against the principal, and that the assignment entitles the surety to proceed as well against the principal as his bail. *Norwood vs. Norwood,* 2 *Harr. & John.* 238. *Sothoren's lessee vs. Reed,* 4 *Harr. & John.* 307. *Merryman vs. The State,* 5 *Harr. & John.* 423. *Creger vs. Brengle,* 5 *Harr. & John.* 234.

2nd. That the assignment made by the creditor to the surety, is in the nature of a purchase, and in the character of a purchaser, he is subrogated to all the rights and remedies of the creditor. *Parsons vs. Braddock,* 2 *Vern.* 609. 1763, *ch.* 23.

3rd. That the surety having taken a legal assignment under the act of 1763, chapter 23, he is competent to proceed in the name of the original plaintiff for his use, as well against the principal as the bail.

In reply he contended, that a *ca. sa.* was not a necessary part of the replication. 2 *Wilson* 65. *Chandler vs. Roberts and another,* 1 *Doug.* 58. 2 *Term. Rep.* 576. *Cappeau vs. Middleton and Baker,* 1 *Harr. & Gill,* 154.

The question as to the necessity of a *ca. sa.* is not made by the pleadings. The want of it here, is a mere formal defect, and matter of special demurrer. The plea was payment. No question made about a *ca. sa.,* and the demurrer was general, hence that defect cannot be urged. 10 *Law Lib.* 203.

ARCHER, J., delivered the opinion of the court.

As there has been an assignment to the surety who paid the judgment, by the creditor, under the act of 1763, chapter 23, the rights of the surety to pursue the bail of the principal, must depend on that assignment. It is unnecessary, therefore, for us to determine, what would be the rights of the surety, as against such bail, where the surety had discharged the debt, either before or after the bail should have been fixed, and where there was no assignment to the surety.

The act of 1763, chapter 23, enacts that, where any person or persons shall recover judgment against the principal debtor,

and surety, and such judgment shall be satisfied by the surety, that the creditor shall be obliged to assign such judgment to the surety satisfying the same, and that the assignee shall be entitled unto, and have in his own name, as assignee, the same execution against the principal debtor, in virtue of such assignment and this act, as the creditor might or ought to have had, the said assignment being first recorded in the said court wherein the judgment shall have been rendered or obtained.

The design of the Legislature by this provision, was to place the surety paying the debt, in the same situation with regard to the principal, as the creditor who had obtained the judgment; and to invest him with all the rights and powers which the creditor possessed, to enforce the payment of the judgment against the principal or, if necessary, against the bail; or in other words, it was the design, that the assignment thus made should carry the full fruits of the judgment, and the means of reaping such fruits. Unless such power was imparted, the act would in many cases furnish no indemnity to the surety. That the act provides for an execution against the principal, and is silent as to any remedy against the bail, does not militate against this construction of the act. It was not intended by this, to restrict the rights of the surety under the assignment; but merely to point out a mode of enforcing an execution against the defendant: that is, it gave him the power of issuing an execution in his *own* name. Without this provision, as a legal assignee of the judgment, he could have used the name of the creditor in issuing an execution, and in proceedings against the bail. It therefore, in fact, enlarged the power of the assignee, by giving him final process in his own name, and as execution was thus expressly given him, every incidental and consequential right, followed and passed with it.

It is objected that the proceedings do not show the issuing and return of a *ca. sa.* against the principal. The pleadings of the defendant do not appear to call for such an averment on the part of the plaintiff; and we think it was wholly unnecessary in this case. The plea of payment enabled the defend-

ant to plead non-payment, without any such necessity, most clearly; and if he could do so, he could with equal reason show by his replication, the facts upon which he relied to establish non-payment. The *sci. fa.* itself, which stands in this action in lieu of a declaration, according to the precedents, contains no such averment, and if the defendant pleads to the *sci. fac.* such a plea as calls in question the right of the plaintiff to issue his *scire facias*, upon other grounds than the failure to issue a *ca. sa.*, and to have a return of *non est*, the omission in the replication to set out such *ca. sa.* and return, ought not to be considered a substantial defect; nor ought the plaintiff in replying to a defective plea to such a *sci. fa.* be compelled to precede his demurrer with such an averment.

JUDGMENT AFFIRMED.